**In re Mark Jeffrey CALDWELL, Debtor.**

**Bankruptcy No. 3-86-01878.**

United States Bankruptcy Court, E.D. Tennessee.

Aug. 13, 1987.

[redacted]

[redacted]

[redacted]

[redacted]

Jenkins & Jenkins, Michael H. Fitzpatrick, Knoxville, Tenn., for debtor.

C. Edwin Shoemaker, Knoxville, Tenn., for Federal Deposit Ins. Corp.

MEMORANDUM ON CONFIRMATION OF SECOND AMENDED PLAN OF REORGANIZATION PROPOSED BY MARK JEFFREY CALDWELL, DEBTOR IN POSSESSION

RICHARD STAIR, Jr., Bankruptcy Judge.

This Memorandum supplements findings made by the court from the bench denying confirmation of the "Second Amended Plan Of Reorganization Filed By Mark Jeffrey Caldwell, Debtor In Possession" (Second Amended Plan).[1] Confirmation was denied upon the court's sua sponte determination that the debtor's Second Amended Plan failed to comply with the provisions of 11 U.S.C.A. § 1129(a)(1) (West Supp.1987).[2]

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(L) (West Supp.1987).

## I

The sole issue for determination is whether the debtor's classification of general unsecured claims into two distinct classes complies with the classification re-

1. The debtor filed his "Plan Of Reorganization Proposed By Mark Jeffrey Caldwell, Debtor In Possession" (Plan) on March 24, 1987; his "First Amended Plan Of Reorganization Proposed By Mark Jeffrey Caldwell, Debtor In Possession" (First Amended Plan) was filed on July 23, 1987. A confirmation hearing held on July 23, 1987, was adjourned to August 5, 1987, to permit the filing of the debtor's Second Amended Plan.

2. The Federal Deposit Insurance Corporation (FDIC) filed an "Objection To Confirmation" on July 16, 1987, premised upon the debtor's alleged failure to satisfy the best interest of creditors test as to its claim as required by 11 U.S.C.A. § 1129(a)(7) (West 1979 & Supp.1987). FDIC also filed its ballot rejecting the debtor's March 24, 1987 Plan. At the July 23, 1987 hearing on confirmation, the debtor filed his First Amended Plan; also, the FDIC withdrew its objection and changed its rejection of the debtor's Plan to an acceptance. When the court voiced concern about an improper classification of unsecured creditors and adjourned the hearing on confirmation to August 5, 1987, the FDIC requested that it be allowed to reinstate its objection pending the adjourned hearing. This request was granted. FDIC did not appear at the August 5, 1987 hearing; the court did not address its objection at that hearing nor will it address FDIC's objection in this Memorandum.

quirements mandated by Bankruptcy Code § 1122.[3] In his Second Amended Plan the debtor divides general unsecured claims into Class 8.A and Class 8.B. Class 8.A consists of all credit card unsecured claims which the debtor proposes to pay in the following manner:

> The debtor shall pay all credit card unsecured claims according to the contracts relating thereto until paid in full and shall retain said cards. If any creditor in this class has or during the Plan requests surrender of the credit card and termination of credit privileges, that creditor will be paid under Class 8.B. All overdue payments will be paid 1/12th until paid in full.

Second Amended Plan, at 7.

Class 8.B is comprised of all other unsecured claims which the debtor proposes to pay as follows:

> The unsecured claims of the debtor not otherwise listed in any other classification shall be paid pro-rata the sum of $25,000.00 without interest which sum shall be paid in 60 equal monthly installments....

Second Amended Plan, at 7.

Creditors holding allowed Class 8.A unsecured claims will be paid in full while creditors holding allowed Class 8.B unsecured claims will be paid approximately 22.7 percent.[4]

The debtor, a dentist, is employed by Mark J. Caldwell, D.D.S., P.C., a professional corporation in which he owns all outstanding shares of stock. Conceding that the legal rights of the creditors within Class 8.A and Class 8.B are identical, the debtor contends he "has separated his credit card obligations from the other general unsecured claims so as to have an opportunity to continue his credit relations with those companies." Memorandum Of Debtor Concerning Claim Classification, at 2. The debtor further contends this is not a case involving separate classification of similar claims for the purpose of obtaining an accepting impaired class and that, as a consumer, he has an interest in preserving his credit standing.

## II

The debtor's Second Amended Plan can be confirmed only if the court determines that all requirements of Bankruptcy Code § 1129 are met. Section 1129 provides in material part:

> § 1129. Confirmation of plan
>
> (a) The court shall confirm a plan only if all of the following requirements are met:
>
> > (1) The plan complies with the applicable provisions of this title.
>
> . . . .

11 U.S.C.A. § 1129 (West 1979 & Supp. 1987).

Section 1122 is the sole statutory basis for classification of claims or interests in Chapter 11. Section 1122(b) authorizes a separate class of unsecured claims for administrative convenience.[5] Apart from a classification for administrative convenience, § 1122(a) provides only that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to other claims or interests of such class." 11 U.S.C.A. § 1122(a) (West 1979). "Similar" is not defined in the Bankruptcy Code. Section 1122(a) does not expressly mandate that all

---

3. Section 1122 provides:
   **Classification of claims or interests**
   (a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.
   (b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.
   11 U.S.C.A. § 1122 (West 1979).

4. While other creditors, e.g., creditors with deficiency claims and Class 8.A creditors requesting that the debtor surrender a credit card may enter Class 8.B, the Second Amended Plan guarantees this dividend to all members of the class.

5. A class of unsecured claims for administrative convenience usually consists of claims of less than a relatively small amount and those that agree to reduce to that amount. Typically, this class of claims is paid in full at confirmation.

similar claims or interests be placed in the same class.

At least one court has held that separate classes containing unsecured claims are contrary to the legislative intent leading to the enactment of § 1122. See *In re Fantastic Homes Enterprises, Inc.*, 44 B.R. 999 (M.D.Fla.1984) (a reasonable inference from reading § 1122 is that Congress intended, except as stated in subsection (b), that all unsecured claims of a similar nature be placed in the same class). The rationale supporting this conclusion is clear—in a Chapter 7 liquidation case, all nonpriority unsecured claims, whether contract, note, tort, etc., participate at the same percentage level of distribution.

An analysis by the Sixth Circuit of both Act and Code case law on the classification issue is found in *Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co. (In re U.S. Truck Co.)*, 800 F.2d 581 (6th Cir.1986). In *U.S. Truck*, the Sixth Circuit upheld the debtor's classification of the Teamsters Committee's claim, based on rejection of a collective-bargaining agreement, in a class by itself, separate from other unsecured [6] claims including those arising from the rejection of executory contracts. While agreeing with the Teamsters Committee that there must be some limit on a debtor's power to classify creditors since a potential for abuse exists,[7] the court nonetheless approved the separate classification because the union's interests differed substantially from those of the other impaired creditors. The court, in its opinion, makes the following material observations:

> Nevertheless, we do find one common theme in the prior case law that Congress incorporated into section 1122. In those pre-Code cases, the lower courts were given broad discretion to determine proper classification according to the factual circumstances of each individual case....

*In re U.S. Truck*, 800 F.2d at 586 (citations omitted).

In reaching its decision that the Teamsters Committee claim was a proper subject of separate classification, the court observed:

> [T]he Teamsters Committee has a different stake in the future viability of the reorganized company and has alternative means at its disposal for protecting its claim. The Teamsters Committee's claim is connected with the collective bargaining process. In the words of the Committee's counsel, the union employees have a *"virtually unique interest."* .... These differences put the Teamsters Committee's claim in a different posture than the Class XI claims. The Teamsters Committee may choose to reject the plan not because the plan is less than optimal to it as a creditor, but because the Teamsters Committee has a noncreditor interest—*e.g.*, rejection will benefit its members in the ongoing employment relationship....

*Id.* at 587 (emphasis added). *Cf. Matter of Jersey City Medical Center*, 817 F.2d 1055, 1061 (3rd Cir.1987) (reasonable to distinguish and separately classify claims of physicians, medical malpractice victims, employee benefit plan participants, and trade creditors).

While this court finds little similarity between the case before it and *In re U.S. Truck*, it does find compelling the conclusion of the Sixth Circuit that a separate classification of the Teamsters Committee's claim was warranted because of the "virtually unique interest" of that creditor. In

---

**6.** The opinion as reported parenthetically identifies Class XI as all "secured" claims in excess of $200.00 including those arising from the rejection of executory contracts. *In re U.S. Truck*, 800 F.2d at 584. This court believes there is a printer's error and that the word "secured" when referring to Class XI claims should in fact be "unsecured." See *Matter of U.S. Truck Co.*, 47 B.R. 932, 938 (E.D.Mich.1985) (Class XI includes: "All unsecured claims in excess of $200.00 including those arising from the rejection of Executory Contracts.").

**7.** The court found that U.S. Truck was using its classification power to segregate dissenting (impaired) creditors from assenting (impaired) creditors in order to assure that at least one class of impaired creditors would accept the plan, as required by § 1129(a)(10), thus making it eligible for cram down under the provisions of § 1129(b).

the instant case the Class 8.A creditors hold no unique interest. There is nothing to distinguish a Class 8.A creditor from a Class 8.B creditor other than the fact the Class 8.A debts represent credit card charges and the debtor desires to retain his credit cards. So strong is the desire of the debtor to retain these credit cards, that his plan provides that any Class 8.A creditor who "requests surrender of the credit card and termination of credit privileges ... will be paid under Class 8.B." Second Amended Plan, at 7. The debtor recognizes the considerable disparity in treatment of these two classes.

*U.S. Truck* permits separate classification of unsecured claims where there is a substantial dissimilarity of interests. Such dissimilarity is not found in the present case. The debtor's classification of general unsecured claims into two distinct classes receiving different treatment is an impermissible classification under the provisions of § 1122. The debtor's Second Amended Plan does not meet the confirmation requirements of § 1129(a)(1), and confirmation will accordingly be denied.