In re **THORNWOOD ASSOCIATES,** Debtor.

**THORNWOOD ASSOCIATES, Appellant,**

v.

**The GREATER NEW YORK SAVINGS BANK, Appellee.**

Bankruptcy No. 1–92–01943.
Civ. A. No. 1:CV–93–640.

United States District Court,
M.D. Pennsylvania.

Sept. 10, 1993.

---

Virginia P. Henschel, Rhoads & Sinon, Harrisburg, PA, for Thornwood Associates.

Lee Allen Zoeller, Harrisburg, PA, Arthur S. Gabinet, Eric R. Green, Dechert, Price & Rhoads, Philadelphia, PA, and Richard C. Kariss, Dechert Price & Rhoads, Harrisburg, PA, for Greater New York Sav. Bank.

Warren L. Forman, Forman & Ziff, Brooklyn Heights, NY, for Stanley Gallant.

## MEMORANDUM

CALDWELL, District Judge.

We are considering an appeal from the order of the United States Bankruptcy Court for the Middle District of Pennsylvania filed March 31, 1993, and exercise appellate jurisdiction according to 28 U.S.C. § 158.

### I. *Facts and Procedural History*

Appellant, Thornwood Associates ("Thornwood"), is a Pennsylvania limited partnership.[1] On March 30, 1987, Appellant received a loan from Appellee, the Greater New York Savings Bank ("GNYSB"), in the principal amount of $2,400,000. The loan was secured by a mortgage on an apartment complex located in Harrisburg, Pennsylvania. Additionally, the parties entered into an assignment of rents agreement to provide additional security for GNYSB. At the time of the loan, the property was appraised at more than $3.2 million.

Eventually, the receipts from the apartment complex dropped off and Thornwood had difficulty meeting its obligations. Beginning in January, 1991, Thornwood began making partial payments on the GNYSB loan. On October 3, 1991, GNYSB notified Thornwood that, because of the payment deficiencies, the entire amount of the note was due by October 10, 1992. Thornwood continued to make partial payments until April, 1992, and no payments have been made since then.

On July 9, 1992, GNYSB confessed judgment against Thornwood in the Court of Common Pleas of Dauphin County, Pennsylvania, in the amount of $2,645,633.22. Later that month, GNYSB began to execute its

---

1. The facts recited are from the briefs of the parties and their joint stipulation.

judgment, posting notices of a sheriff's sale on the property and directing tenants to make rent payments to a management company in New Jersey operating on GNYSB's behalf.

The apartment complex in question is subject not only to GNYSB's interest, but to a second mortgage held by Stanley Gallant in an amount between $450,000 and $665,000.[2]

Thornwood filed a petition in bankruptcy on August 24, 1992, and, on November 24, 1992, GNYSB filed a motion to dismiss the petition or lift the automatic stay. After two hearings, the Bankruptcy Court entered an order on March 31, 1993, granting GNYSB's motion to lift the automatic stay, 161 B.R. 367. That order is the subject of the current appeal.

## II. *Law and Discussion*

### A. *Standard of Review*

A district court reviewing a bankruptcy court's findings of fact must reverse only if those findings are "clearly erroneous." Bankruptcy Rule 8013; *Granfinanciera, S.A., et al. v. Nordberg*, 492 U.S. 33, 50, 109 S.Ct. 2782, 2794, 106 L.Ed.2d 26, 46 (1989). We review the Bankruptcy Court's conclusions of law *de novo*. *In re Marcus Hook Development Park, Inc.*, 943 F.2d 261, 266 (3d Cir.1991).

### B. *Reorganization and Voting*

The Bankruptcy Code sets forth two methods for reorganization plans to be confirmed, approval by all impaired classes or "cram down." 11 U.S.C. §§ 1129(a) and (b). In "cram down" situations, a debtor need have approval of just one impaired class so long as the plan does not discriminate unfairly and treats all impaired classes fairly and equitably. *Id.*

■ In bankruptcy, it is possible for a creditor to ask the court to lift the automatic stay on the property of the estate. Section 362(d)(2) of the code requires a bankruptcy court to lift the automatic stay on request of a party in interest and after notice and a hearing if

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

The parties in this case have focused on the second requirement, which the United States Supreme Court has construed to require a debtor to show "a reasonable possibility of a successful reorganization within a reasonable time." *United Savings Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 376, 108 S.Ct. 626, 633, 98 L.Ed.2d 740, 751 (1988). Put more directly, the bankruptcy court may lift the stay if the debtor can not demonstrate that it will have a confirmed reorganization plan soon.

In the instant case, the Bankruptcy Court determined that the proposed classification of creditors in Thornwood's plan was improper and that, without Thornwood's scheme, there was no way a plan could be confirmed so as to defeat GNYSB's motion to lift the stay.

■ A bankruptcy debtor may classify its creditors. *John Hancock Mutual Life Insur. Co. v. Route 37 Business Park Associates*, 987 F.2d 154, 157 (3d Cir.1993). The debtor may not, however, create a class of creditors solely for the purpose of establishing a separate voting class to approve a "cram down" plan. *Id.* at 158. The question in the case at bar is whether Thornwood improperly placed Gallant in a separate class so that he could provide the crucial vote to confirm the existing plan and block GNYSB's attempt to lift the stay and foreclose on the apartment complex.

### C. *Classification and John Hancock*

■ The most recent pronouncement of the United States Court of Appeals for the Third Circuit on the question of classification is *John Hancock, supra.* The parties disagree about the application of that case to the facts of this case.[3]

---

2. The parties disagree about the precise amount.

3. To some extent, Appellant criticizes the holding of *John Hancock*. As Appellee notes, decisions of the Third Circuit are binding on this Court and we must apply the law as that court interprets it. We are not free to ignore Third Circuit holdings if we disagree with them.

■ In *John Hancock,* the Third Circuit explained that debtors may create separate classes of creditors, but that

each class must represent a voting interest that is sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed reorganization should proceed.

*Id.* at 159. The court held that the determination of whether a classification scheme is reasonable must be guided by two considerations: (1) the effect on voting and (2) the treatment of claims under the plan. *Id.* The United States Court of Appeals for the Fifth Circuit succinctly stated the rule in *In re Greystone III Joint Venture,* 948 F.2d 134, 139 (5th Cir.1991): "thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan."

In its March 31, 1993, order in this case, the Bankruptcy Court held that Thornwood could offer no valid reason for separately classifying the GNYSB and Gallant claims and that, under *John Hancock,* the plan was improper.[4]

On appeal, Thornwood argues that there are critical distinctions that should foreclose our applying the holding of *John Hancock* to the facts of this case. We read Appellant's argument to claim three meaningful distinctions.

■ First, Appellant suggests that this case is distinct because Gallant "retained 're-course' capacity by virtue of a personal guaranty and who was willing to forego enforcement of the independent guaranty for a negotiated treatment under the plan of reorganization." Brief of Appellant at 16–17. This guaranty apparently refers to Gallant's rights against Thornwood's general partner, Steven Kessner. We agree with those courts that have concluded that the availability of other sources to satisfy a debt is an irrelevant point of distinction. *See, e.g., John Hancock, supra,* at 161; *In re 500 Fifth Avenue Associates,* 148 B.R. 1010, 1019 (Bankr.S.D.N.Y.1993), *aff'd* 1993 WL 316183

(S.D.N.Y. May 21, 1993). The possible avenues of recourse outside the context of the bankruptcy plan in question are beside the point. We look at the character of the claims *as they relate to the particular debtor and its property. Id.*

■ Appellant's second argument is that the holding of *John Hancock* requires that, for a classification to be improper, the creditors in the distinct classes must be treated the same under the plan. We need not dwell on this issue, as we agree with Appellee that the *John Hancock* court merely pointed to similar treatment as one significant indicator that a classification was merely attempted gerrymandering. The court quoted the Fourth Circuit when it suggested that, where the separate classes are treated the same, the plan is " 'at a minimum, highly suspect.' " *John Hancock,* 987 F.2d at 160, *quoting In re Bryson Properties, XVIII,* 961 F.2d 496, 502 (4th Cir.1992). There is, however, a difference between a red flag and a required attribute.

■ The third argument is that, for a classification to be improper, the relative amounts of the claims must be widely disparate, such that the danger of giving a vote on the plan to a minor creditor is that a major creditor would be disenfranchised. The *500 Fifth Avenue* court noted this disparity in finding a plan inappropriate. As Appellant argues, because of the current value of the property, the unsecured portion of the bank's claim and of Gallant's claim are roughly equal. However, our reading of *John Hancock* does not indicate that this issue is significant. Indeed, the Third Circuit never addressed the relative sizes of the claims. In applying the teachings of *John Hancock* to the instant case, we do not find the amounts of the claims important.

In summary, we conclude that Appellant has failed to demonstrate that the Bankruptcy Court did not properly apply *John Hancock* to this case. We find that the Bankruptcy Court correctly determined that the classification proposed by Thornwood was

4. In its order, the Bankruptcy Court gave Thornwood ten days to offer proof that GNYSB did not have a large enough claim to prevent confirmation of the plan under any acceptable classification. Thornwood did not offer such proof.

442

improper, that the plan could not be confirmed, and that the automatic stay should be lifted.

D. *New Evidence*

 Without legal support, Appellant alternatively argues that new factual developments since the time of the Bankruptcy Court's order require that we remand the case to the Bankruptcy Court for further consideration.

With reference to bankruptcy matters, we sit as an appellate court. Thus, we may review only the record before the Bankruptcy Judge to determine whether his determinations of fact were "clearly erroneous" or his conclusions of law improper. *See In re Sugar Industry Antitrust Litigation*, 579 F.2d 13, 19 (3d Cir.1978).

We will affirm the March 31, 1993, order of the Bankruptcy Court and deny the appeal.