**In re WBA ASSOCIATES LIMITED DIV-IDEND HOUSING ASSOCIATION LIM-ITED PARTNERSHIP, Debtor.**

**Bankruptcy No. 97–53104.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

June 29, 1998.

James R. Cambridge, Christopher L. Kerr, Detroit, MI, for SASCO.

Vicki R. Harding, Detroit, MI, for Debtor.

Kurt E. Krause, Lansing, MI, for MI State Housing Dev. Authority.

***OPINION IN REGARD TO DEBTOR'S SEPARATE CLASSIFICATION OF THE CLAIMS OF SASCO 1997–N1 L.L.C. AND THE MICHIGAN STATE HOUSING DEVELOPMENT AUTHORITY***

WALTER SHAPERO, Bankruptcy Judge.

*Background and Facts*

WBA Associates Limited Housing Association Limited Partnership ("Debtor") owns a residential apartment project in Detroit, Michigan, (its principal asset) commonly known as Trolley Plaza Apartments (the "Project"). SASCO 1997–N1 L.L.C. ("SASCO") is the current holder of a first mortgage on the Project, with an outstanding principal balance of approximately $17,436,-841. The Michigan State Housing Development Authority ("MSHDA") holds a second mortgage on the Project, with an outstanding principal balance of approximately $595, 495. Debtor defaulted on SASCO's mortgage note, and in compliance with its terms and condi-

tions, the entire principal balance became due. A Notice of Default was recorded, foreclosure proceedings were commenced in May 1997, and a foreclosure sale was scheduled for August 11, 1997. Debtor filed its Chapter 11 bankruptcy petition on August 8, 1997.

The project was originally viewed as one for persons of modest to low means who prefer to live in an urban/downtown area. The anticipated revitalization of the area surrounding the Project did not occur, however, and the Debtor soon began operating at a loss. As a result of its increased operating expenses and decreased revenues, the Debtor sought and obtained a loan from MSHDA in late 1991, secured by a second mortgage on the Project, the proceeds of which were used to pay down the first mortgage.

The mortgage and note SASCO now holds was originated through the City of Detroit Downtown Detroit Development Authority ("DDA"), which issued approximately $16 million in bonds, secured by a first mortgage on the Project, which was insured by the U.S. Department of Housing and Urban Development ("HUD"). After Debtor obtained the MSHDA second mortgage loan, it continued to experience financial problems, and Debtor and HUD entered into loan restructuring negotiations with no results. Eventually, HUD auctioned off the Project loan, which eventually was assigned to SASCO.

MSHDA was created to address the housing needs of low to moderate income families and individuals in Michigan, with a particular focus on development in distressed urban areas. MSHDA accomplishes this objective by providing below-market loans and/or grants to eligible borrowers, and typically requires a certain percentage of units to be limited to those within specified lower income ranges. In exchange for MSHDA's loan, Debtor agreed to restrict twenty percent of its total occupancy to those individuals with income not more than eighty percent of the median. MSHDA's promissory note with Debtor provided that repayment was to occur on sale, refinancing, or maturity of the first mortgage (now held by SASCO).

In its Combined Plan of Reorganization and Disclosure Statement ("Plan"), Debtor classifies claims in the following manner:

Class 1A: Secured Impaired Claim of SASCO, which consists of only a portion of the total SASCO claim, estimated to be no more than $10,500,000;

Class 1B: Unsecured Deficiency Impaired Claim of SASCO, which consists of the remainder owed by Debtor to SASCO, an amount which depends on the total of the Class 1A claim;

Class 2: Unsecured Deficiency Impaired Claim of MSHDA, in the amount of $595,-495. (There being no equity over and above the amount due on or secured by the SASCO mortgage.)

Class 3: Unsecured Trade Claims, which are unimpaired and estimated to total approximately $29,000.

Classes 4A and 4B: Allowed Equity Interests of Partners, which are impaired.

On February 20, 1998, SASCO filed a motion to dismiss Debtor's Chapter 11 petition or for relief from the automatic stay, on several grounds: 1) Debtor's case should be dismissed because it was filed in bad faith under § 1112(b); 2) SASCO should be granted relief from the stay under § 362(d)(1), for the same reason; 3) SASCO should be granted relief from the stay under § 362(d)(2), because Debtor improperly classified Classes 1B and 2; and 4) Debtor's case should be dismissed under § 1112(b)(2), because it will be unable to effectuate a plan because of that improper classification, which was put forward solely to invoke the "cram down" provision. Specifically, SASCO argues that the Class 1B unsecured claim of SASCO and Class 2 claim of MSHDA should not be classified separately, because it lacks justification and was done only with the intent to gerrymander and invoke the "cram down" provision of § 1129(a)(10) and permit acceptance of the Plan by way of MSHDA's affirmative vote in its separate, impaired class. Responses were filed by Debtor and MSHDA, arguing that separate classification of Classes 1B and 2 is justified primarily because MSHDA has the separate, non-creditor interest of assuring affordable housing in Michigan, particularly in urban areas where the Project is located.

The confirmation hearing in this case is scheduled for July 22, 1998. The Court indicated it would make a determination on the classification issue pre-confirmation, because it is separable from other confirmation issues, is essential to the confirmation process and a decision adverse to the Debtor would require it to take a new look at its Plan as presently constituted. The Court has determined that the separate classification of Classes 1B and 2 is not justified.

*Law and Discussion*

## I. Confirmation and "Cram Down" Under § 1129(a) and (b)

■ A plan of reorganization may be confirmed by a court if all of the thirteen requirements of § 1129(a) have been met. The relevant one here is (a)(8), which mandates that all impaired classes vote in favor of the Plan.[1] The plan proponent may avoid that requirement by proposing confirmation under § 1129(b). That section imposes the same requirements as § 1129(a), except for (a)(8), but requires that the plan: 1) "not discriminate unfairly"; and 2) be "fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted the plan," and further requires that at least one impaired class vote in favor of the plan.

Debtor seeks approval of its Plan under § 1129(b)'s "cram down" provision. MSHDA, as the sole holder of the impaired Class 2 claim, has stated its intention to vote in favor of the Plan, thus satisfying subsection (a)(10), provided the other requirements of § 1129(b) are met. SASCO has stated it will not vote in favor of the Plan.

## II. Separate Classification of Claims

■ Classification of claims or interests, as relevant to this case, is covered in § 1122(a), which states:

Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

Thus, all claims in a single class are required to be substantially similar. By its terms at least it does not preclude a claim which is substantially similar to claims in one class from being separately classified in or as another, i.e., can substantially similar claims be separately classified? That situation was dealt with in *Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co. (In re U.S. Truck Co.)*, 800 F.2d 581, 586 (6th Cir. 1986), where the Sixth Circuit Court of Appeals said:

There must be some limit on a debtor's power to classify creditors in such a manner. The potential for abuse would be significant otherwise. Unless there is some requirement of keeping similar claims together, nothing would stand in the way of a debtor seeking out a few impaired creditors (or even one such creditor) who will vote for the plan and placing them in their own class.

Other circuits agree. *See Boston Post Road Ltd. Partnership v. F.D.I.C. (In re Boston Post Road Ltd. Partnership)*, 21 F.3d 477, 483 (2d Cir.1994) (holding that a legitimate reason other than creation of impaired assenting class must be proven for separate classification to be allowed); *John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assoc.*, 987 F.2d 154, 159–60 (3d Cir.1993) (holding that a debtor's power to classify claims is limited); *Travelers Ins. Co. v. Bryson Properties, XVIII (In re Bryson Properties, XVIII)*, 961 F.2d 496, 502 (4th Cir.1992) (holding that separate classification of similar claims is allowed, but only "for reasons independent of the debtor's motivation to secure the vote of an impaired, assenting class of claims"); *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1279 (5th Cir.1991) (articulating the "one clear rule" on this subject as being, "thou shalt not classify

---

1. A class is deemed to have accepted the plan if § 1126(c) is satisfied, which provides:

 A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

similar claims differently in order to gerrymander an affirmative vote on a reorganization plan").

In *U.S. Truck,* the debtor classified the impaired claim of the Teamster's Committee ("Committee") separately from the three other non-insider impaired claims. The Committee's claim arose from the debtor's alleged liability resulting from the debtor's rejection of the collective bargaining agreement between the Teamsters Local Union, (representing the debtor's employees), and the debtor. The Sixth Circuit concluded that the Committee's claim encompassed a "virtually unique interest," and that the Committee had a "different stake in the future viability of the reorganized company and ha[d] alternative means at its disposal for protecting its claim." *U.S. Truck,* 800 F.2d at 587. The Sixth Circuit adopted the differences noted by the district court in its conclusion that the Committee's interests were substantially different from the impaired claims of the other creditors. Specifically, the district court in *U.S. Truck* determined the differences to be as follows: 1) Committee employees had a "unique continued interest in the ongoing business of the debtor"; 2) the mechanics of the Committee's claim were substantially different from those of the other impaired claims; and 3) unlike the other impaired claims, the Committee's claim would likely become part of the future collective bargaining process between the union and the reorganized debtor. The Sixth Circuit therefore characterized the Committee's interest as a non-creditor interest, i.e., one which "will benefit its members in the ongoing employment relationship."

Debtor argues that *U.S. Truck* supports a finding that the separate classification of MSHDA's claim is justified here, based primarily on MSHDA's unique public purpose of assuring affordable housing for low to moderate income individuals and families. Debtor maintains that just as the Committee in *U.S. Truck* had a "different stake in the future viability of the reorganized company," and was in a "different posture" than other impaired creditors, so is MSHDA, and asserts that in addition to the general unique character of MSHDA's claim, MSHDA has the "non-creditor interest" that the *U.S.*

*Truck* Court speaks of because its ongoing relationship with MSHDA permits Debtor to be eligible for another loan through MSHDA, and provides eligibility for a property tax abatement if Debtor were to reapply for another loan.

Debtor relies on *Heartland Fed. Sav. & Loan Assoc. v. Briscoe Enters., Ltd., II (In re Briscoe Enters., Ltd., II),* 994 F.2d 1160 (5th Cir.1993). Somewhat similar to this case, *Briscoe* involved a Chapter 11 single asset real estate debtor which operated an apartment complex funded from two sources (both non-recourse): a) a first mortgage to Heartland Federal Savings and Loan Association ("Heartland"); and b) a second mortgage to the City of Fort Worth ("City"). In addition to its loan to the debtor, the City (and the federal government) provided monthly rental assistance to about twenty-five percent of the occupants. The debtor in that case separately classified the unsecured deficiency claims of Heartland and the City. Heartland objected, arguing that there was no justification for the debtor's doing so other than to obtain approval of the plan. Citing and reviewing *U.S. Truck* and *Greystone,* the Fifth Circuit held that the City's relationship with the debtor was "essential to the continued operation of this housing complex," thus finding the City's claim distinct because of its "non-creditor interests relating to its urban housing program, . . . and its contribution of $20,000 a month in rental assistance ." *Briscoe,* 994 F.2d at 1167. The *Briscoe* Court emphasized the "narrowness" of its holding, and warned that "[i]n many bankruptcies, the proffered reasons . . . will be insufficient to warrant separate classification." *Id.*

The impaired claims of SASCO and MSHDA are substantially similar in important ways. Both are unsecured, deficiency claims that arise from mortgages on the same property secured by non-recourse mortgage notes, which in terms of payment are treated identically under the Plan.

 Logic, and the cases, properly read, seem to require a relationship which is both sufficiently independent of the debtor/creditor relationship arising out of the claim and

the terms of payment of that claim, and, real and ongoing, so as to permit one to conclude that the play out of that non-creditor aspect of that relationship will likely play a significant role in the viability or success of the reorganization effort. The ongoing employer/employee relationship in *U.S. Truck*, and the rent subsidies in *Briscoe* are in that category; what exists in this case is not. MSHDA's admirable public purpose, while it may have occasioned the loan relationship in the first place, no longer plays an active or ongoing day-to-day role in the relationship of the parties over and above what are the incidents of what is now nothing more than a debtor/creditor relationship between them, and to that extent, is akin to what occasioned the original loan (to which SASCO has succeeded) from HUD, which is likewise a grantor of loans or guarantees for a unique, commendable public purpose. Debtor's relationship with MSHDA, which merely provides eligibility for future MSHDA loans and the possibility of a property tax abatement, is insufficient. There are no such loan requests or applications pending, and Debtor has not provided a record which would indicate such are needed or likely (and in the case of the tax abatement, presumably consent of and application to the taxing authority is also likely required). Thus, they are merely possibilities, and much too "iffy" or remote as to raise them to the level of the required ongoing non-creditor interest. To say otherwise would be to put too great a premium on the identity of the mortgagee at the expense of the nature of and substance of the relationship going forward.

### Conclusion

The Court therefore finds that the unsecured impaired claims of SASCO and MSHDA do not justify their separate classification. As such, the Court concludes that the separate classification was done for the sole purpose of creating an impaired class for voting purposes under § 1129(a) and (b). As the classification issue is the only one currently before it, the Court makes no findings as to the other arguments raised by SASCO or to the overall issue of confirmation of Debtor's Plan. The Court simply concludes it could not confirm the Plan presented by Debtor which separately classifies the unsecured impaired claims of SASCO and MSHDA.

To the extent it deems appropriate, SASCO shall prepare and present an order consistent with this Opinion.