**In re THORNWOOD ASSOCIATES,
Debtor.**

**Bankruptcy No. 1–92–01943RJW.**

United States Bankruptcy Court,
M.D. Pennsylvania.

March 31, 1993.

Virginia P. Henschel, Rhoads & Sinon, Harrisburg, PA, for appellate Thornwood Associates.

Arthur S. Gabinet, Deckert, Price & Rhoads, Philadelphia, PA, for appellee The Greater New York Sav. Bank.

### MEMORANDUM

ROBERT J. WOODSIDE, Chief Judge.

Before me is the issue of whether a classification scheme proposed by debtor Thornwood Associates ("Thornwood") may be permitted consistent with the decision of the Third Circuit Court of Appeals in *John Hancock Mutual Life Ins. Co. v. Route 37 Business Park Assocs.*, 987 F.2d 154 (3d Cir. 1993). For the reasons set forth below, I hold that it cannot, and, unless Thornwood can establish that the unsecured deficiency claim held by the Greater New York Savings Bank (the "Greater") should be limited to such an extent that the Greater does not dominate the voting of the class of unsecured creditors, the automatic stay should lift on the ground that there is no reasonable possibility of an effective reorganization.

### Background

Thornwood filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on August 24, 1992. Thornwood's principal asset is a 114 unit garden apartment complex in Harrisburg, Pennsylvania ("Thornwood Apartments"). In March, 1987, The Greater loaned Thornwood $2,400,000.00, and the Greater obtained a mortgage with respect to Thornwood Apartments. The Greater also obtained an assignment of rents in connection with the transaction.

Beginning in January, 1991, Thornwood began defaulting with respect to its obligations to the Greater. In July, 1992, the Greater ultimately confessed judgment against Thornwood in the amount of $2,645,-000.00 and exercised its rights under the assignment of rents. Subsequently, the Greater commenced execution proceedings; however, Thornwood's filing of a petition for relief stayed those proceedings.

In its schedules, Thornwood identified a $450,000.00 obligation to Stanley Gallant ("Gallant"), who holds a second mortgage on Thornwood's property. Thornwood also identified an unsecured priority claim in the amount of $60,000.00, held by the City of Harrisburg. Finally, Thornwood has identified six other unsecured creditors whose claims total approximately $80,000.00.

On November 24, 1992, the Greater filed a motion to dismiss or in the alternative to lift the automatic stay. On December 9, 1992, the Greater submitted a separate motion to lift the automatic stay. The parties submitted a joint stipulation of facts with respect to the Greater's motion, and I heard testimony with regard to the motion for relief from the automatic stay on January 19, 1993, and on February 11, 1993. On December 14, 1992, Thornwood filed a motion for extension of its exclusive time to file a plan of reorganization. On February 5, 1993, the Greater filed a plan of reorganization. Thornwood subsequently moved to strike the Greater's plan. Thornwood has not yet filed its plan of reorganization, but has described its proposed classification scheme in its papers.

After the February hearing, I agreed to determine whether Thornwood can propose a confirmable plan in light of the Third Circuit's decision in *John Hancock*.

### Discussion

■ In order to defeat the motion for relief from the automatic stay submitted by the Greater, Thornwood must demonstrate that confirmation of a reorganization plan is within the realm of possibility. *See United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 375–76, 108 S.Ct. 626, 632–33, 98 L.Ed.2d 740 (1988); *see also In re 266 Washington Assocs.*, 141 B.R. 275, 281 (Bankr.E.D.N.Y.) (stating that "[t]he 'effective reorganization' requirement enunciated by the Supreme Court ... require[s] a showing by a debtor ... that a proposed or contemplated plan is not patently unconfirmable and has a realistic chance of being confirmed"), *aff'd*, 147 B.R. 827 (E.D.N.Y. Dec. 10, 1992). At this stage, I have agreed to review this requirement only as it relates to Thornwood's ability to classify claims in a manner such as would lead to a realistic possibility of a confirmable plan and an effective reorganization.

■ Claim classification oftentimes is described by the courts as a "gateway" to plan confirmation—if a debtor properly cannot classify claims in a manner that will yield affirmative class votes, there is no realistic

possibility of a successful reorganization. *See John Hancock,* 987 F.2d at 157–158; *266 Washington Assocs.,* 141 B.R. at 281–82.

Under Section 1129 of the Bankruptcy Code, a plan may be confirmed if it leaves each class of creditors unimpaired or is accepted by each impaired class. 11 U.S.C. § 1129(a)(8). Any plan that does not meet these requirements and leaves any class of creditors impaired can be confirmed only by "cram down." 11 U.S.C. § 1129(b); *see 266 Washington Assocs.,* 141 B.R. at 281. A prerequisite to a "cram down" is acceptance of the plan by at least one impaired class. 11 U.S.C. § 1129(a)(10). A class accepts a plan if, among those creditors who vote, creditors having two-thirds in dollars and one-half in number of claims vote in favor of the plan. 11 U.S.C. § 1126(c).

In single asset cases in which the secured creditor's claim is undersecured, the creditor has a secured claim limited to the value of its collateral, *see* 11 U.S.C. § 506(a), and the option of maintaining an unsecured deficiency claim with respect to the remainder of its claim. *See* 11 U.S.C. § 1111(b). Oftentimes, this deficiency claim will be so large that, if placed in the class of unsecured creditors, it would dominate the class and control the outcome of any vote. If no other legitimate "impaired" class is present, the deficiency claim holder effectively can bar the debtor from access to "cram down" under Section 1129(b). In a number of cases, debtors have attempted to classify the deficiency claim separately from the claims of other unsecured creditors in order to make use of the "cram down" method.

Such was the issue before the Third Circuit in *John Hancock.* There, the Third Circuit rejected a debtor's attempt separately to classify an unsecured deficiency claim from other unsecured claims. The court began its analysis with the general rule regarding classification of claims contained in Section 1122(a)—claims that are not "substantially similar" may not be placed in the same class. *John Hancock,* 987 F.2d at 158. Although this section of the Bankruptcy Code does not restrict explicitly the debtor's ability to classify similar claims differently, the court found that a limitation upon the debt-

or's ability to do so is implicit in the Bankruptcy Code. *Id.* at 158. The court concluded that "the classification of the claims or interests [in a Chapter 11 plan] must be reasonable." *Id.* at 158 (quoting *Matter of Jersey City Med. Center,* 817 F.2d 1055, 1061 (3d Cir.1987)); *In re Stratford Assocs. Ltd. Partnership,* 145 B.R. 689, 695 (Bankr. D.Kan.1992) (noting that "the majority of courts accept the separate classification of similar claims so long as such classification is based on legal or factual distinctions and is not for the purposes of gerrymandering the voting on the plan"); *266 Washington Assocs.,* 141 B.R. at 283 (stating that "[t]here must be some independent reasonable grounds or valid justification for separately classifying substantially similar claims"). Amplifying on this "reasonableness" criterion, the Third Circuit stated:

> [w]here, as in this case, the sole purpose and effect of creating multiple classes is to mold the outcome of the voting, it follows that the classification scheme must provide a reasonable method for counting votes. In a 'cram down' case, this means that *each class must represent a voting interest that is sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed reorganization should proceed.* Otherwise, the classification scheme would simply constitute a method for circumventing the requirement set out in 11 U.S.C. § 1129(a)(10) (1988).

*John Hancock,* 987 F.2d at 159 (emphasis added); *see also Matter of Greystone III Joint Venture,* 948 F.2d 134, 139 (5th Cir. 1991) (stating that "the one clear rule that emerges from otherwise muddled caselaw on § 1122 claims classification" is that "thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan"), *cert. denied,* —— U.S. ——, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992).

The Third Circuit held that the only possible purpose of classifying the unsecured deficiency claim separately from the claims of other unsecured creditors was impermissible gerrymandering. Because the debtor reasonably could not create an impaired class that would vote in favor of its plan of reorganization, the "cram down" method was not

available to it and no reasonable possibility of a successful reorganization could be found to exist. *John Hancock,* 987 F.2d at 162.

■ In this case, Thornwood contemplates a plan that places the Greater's deficiency claim in the same class as the claims of most unsecured creditors. Thornwood proposes, however, to classify separately the claims of Gallant. Thornwood is obligated to Gallant pursuant to a loan secured by a second mortgage on the Thornwood Apartments property in the principal amount of $450,000.00. *See supra* p. 368.

Thornwood contends that such separate classification is permissible on the following grounds:

> The legal character of Stanley Gallant's unsecured claim is distinct from the deficiency claim held by the Bank, in that Stanley Gallant is forbearing on its rights held under a personal guaranty in order to participate in the plan of reorganization.
>
> *       *       *       *       *       *
>
> [Additionally,] the second mortgagee has consented to accept a 100% equity position under a plan of reorganization. While the 'value' of this equity position at the time of confirmation would be zero, the second mortgagee is willing to rely upon future appreciation of the subject property.

Thornwood's supplemental memorandum at 6–8. Thornwood further contends:

> The essential issue that justifies the separate treatment of Mr. Gallant's claim is that the legal character warrants separate classification, as permitted in accordance with the dictates of *John Hancock.* Mr. Gallant holds a separate and distinct legal remedy that survives the treatment of its unsecured claim in the plan of reorganization ... The ability of a debtor to successfully persuade a creditor having legal rights that survive the resolution in bankruptcy to forego that legal remedy, for a negotiated treatment under a plan of reorganization is an *opportunity* provided under the Bankruptcy Code....
>
> *       *       *       *       *       *
>
> [The *John Hancock* ] mandate does not preclude the separate classification of a

claimant that retains 'recourse' capacity by virtue of a personal guaranty, but is willing to forego enforcement of the independent guaranty for a negotiated treatment under a plan of reorganization.

Thornwood's reply memorandum at 2–3 (emphasis in original). Of course, separate classification of Gallant's claim has the collateral benefit of creating an impaired class that likely will vote in favor of the plan. Thornwood thus would be able to take advantage of the "cram down" method, but only if this claim classification scheme can be permitted.

■ Thornwood points out that its proposed plan does not run afoul of the *John Hancock* decision on the facts of the case—Thornwood has stated a reason for the separate classification independent of its motivation to secure the vote of an impaired class of claims. Nonetheless, Thornwood's strategy implicates the broader concerns discussed in *John Hancock* with respect to claim classification. *See John Hancock,* 987 F.2d at 158 (stating that "[u]nless there is some requirement of keeping similar claims together, nothing would stand in the way of a debtor seeking out a few impaired creditors (*or even one such creditor* ) who will vote for the plan and placing them in their own class" (quoting *In re U.S. Truck Co.,* 800 F.2d 581, 586 (6th Cir.1986) (emphasis added)). *John Hancock* teaches not only that there must be a reason other than gerrymandering to classify separately the claims of an unsecured creditor; the reason also must be "reasonable" within the constraints of the Bankruptcy Code.

■ Serious questions arise as to the "reasonableness" of Thornwood's proffered reason for separate classification of Gallant's claim. First, the focus of claim classification requirements should be upon the nature of the creditor's claims *"as it relates to the assets of the debtor."* In re Heron, Burchette, Ruckert & Rothwell, 148 B.R. 660, 670 (Bankr.D.Colo.1992) (emphasis added); *see also Greystone III,* 948 F.2d at 134 (stating that "[o]rdinarily 'substantially similar claims,' those which share common priority and rights *against the debtor's estate,* should be placed in the same class") (emphasis added). Thornwood's reason for separate classi-

fication of Gallant's claim is based upon the nature of Gallant's claim as it relates to the assets of a third-party guarantor. *See supra* p. 370. In *Heron*, the bankruptcy court considered, *inter alia*, whether the claims of creditors with claims against non-debtor should be classified separately from claims of creditors that did not have such claims. The debtor's plan proposed to classify both categories of claims together as part of their "Class IV(A)." The bankruptcy court stated:

> to 'the extent Class IV(A) members allege different claims against the continuing partners, *that provides no basis for separate classification*. In classifying claims, 'the focus of classification is the legal character of the claim as it relates to the assets of the debtor.' The claims of the Class IV(A) members do not differ with respect to the assets of the debtor. Therefore, separate classification is unnecessary.

*Id.* at 670 (quoting *In re AOV Indus., Inc.*, 792 F.2d 1140, 1150 (D.C.Cir.1986)) (emphasis added).

The *Heron* case illustrates that Thornwood only partially is correct in its statement that

> [t]he imprimatur of *John Hancock* does not alter the ability of a debtor to separately classify unsecured claims based upon the distinct legal character, different treatment, and unique attributes or interests of each class of claims.

Thornwood's supplemental memorandum at 6. The relevant criteria is the legal character and differing attributes of particular claims *as they relate to assets of the debtor's estate within the context of the Chapter 11 case.*[1]

This point is made more forcefully in the bankruptcy court's decision in *In re 500 Fifth Avenue Assocs.*, 148 B.R. 1010 (Bankr. S.D.N.Y.1993). There, the debtor proposed to classify the unsecured claim of a second mortgagee separately from the unsecured deficiency claim held by the first mortgagee,

GECC. In finding the classification scheme to be impermissible, the bankruptcy court stated:

> The debtor's obligations to both GECC and Conflate constitute nonrecourse debt. *Within the framework of [C]hapter 11, the deficiency claims are allowed unsecured claims ... no different from the obligations owed to the recourse creditors, even though outside of the bankruptcy arena recourse creditors may be able to recover from an individual general partner.* Since these are creditors of equal rank with equal rights within [C]hapter 11, in the absence of a purpose independent of the debtor's desire to gerrymander an impaired assenting class, they should be classified together.

*Id.* at 1019 (emphasis added); *see also 266 Washington Assocs.*, 141 B.R. at 282 (stating that "[g]enerally, unsecured creditors hold substantially similar claims; they are claimants of equal legal rank entitled to share pro rata in values remaining after payment of secured and priority claims"). The *500 Fifth Avenue* bankruptcy court thus emphasized the context of proceedings and concluded that the existence and nature of rights the parties might have outside of the Chapter 11 proceedings were irrelevant. *500 Fifth Avenue*, 148 B.R. at 1019.

Similarly, in a number of cases, bankruptcy courts have acknowledged that trade creditors had the right to pursue a debtor's general partners to satisfy their claims in full, but that did not constitute a reason for separately classifying such claims from the claims of unsecured creditors that did not have such recourse available. *See, e.g., John Hancock*, 987 F.2d at 161 (stating that "[t]he debtor's explanation [for differential classification], based on the rights that Hancock would enjoy under state law if freed from the strictures of the Bankruptcy Code, is entirely beside the point");[2] *In re Cantonwood As-*

---

[1] Notably, the issue in the *Heron* case was whether claims had to be classified separately, *not* whether they could be classified separately on ground of the various interests. Nonetheless, the bankruptcy court's reasoning provides insight into the "reasonableness" of such separate classification, and suggests that differences

among claimants' potential recourse against non-debtor entities does not constitute a valid reason for separate classification.

[2] In *John Hancock*, the court also recognized that whether or not a claimant has recourse *against the debtor* under applicable state law is

*socs. Ltd. Partnership,* 138 B.R. 648, 657 (Bankr.D.Mass.1992); *266 Washington Assocs.,* 141 B.R. at 285.

Thornwood attempts to discredit the decision in *500 Fifth Avenue* by contending that the Third Circuit did not "embrace" the decision in *John Hancock,* despite the fact that the *500 Fifth Avenue* decision was rendered prior to the *John Hancock* decision. *See* Thornwood's reply memorandum at 1. However, the two decisions were entered within two weeks of each other; accordingly, I will not presume that the Third Circuit was aware of the *500 Fifth Avenue* decision at the time it rendered the *John Hancock* decision. Moreover, *500 Fifth Avenue* represents a logical application of the principles set forth in *John Hancock* to a different fact pattern. That fact pattern is similar to that at issue before me, and, accordingly, the *500 Fifth Avenue* decision provides guidance as to the correct application of the *John Hancock* principles in the instant case.

For these reasons, I find that Thornwood's proposed classification of Gallant's claim separately from the Greater's unsecured deficiency claim is not "reasonable" as intended by the Third Circuit in *John Hancock.* I find Thornwood's proposed classification scheme to be improper because it unreasonably places creditors of equal rank into separate classes. In the instant case, the deficiency claim of the Greater is equal in rank within the bankruptcy context to Gallant's unsecured claim. The fact that Gallant holds a personal guarantee outside of bankruptcy is not relevant to the claim classification inquiry in the Chapter 11 context. *See supra* pp. 370–72.

My decision that Gallant's willingness to abandon a guarantee as against a non-debtor is not a valid reason for separate classification is strengthened by a line of cases that hold that the protection of third-party guarantors is not a legitimate purpose for invoking the bankruptcy process. For example, in *In re Woolley's Parkway Center, Inc.,* 147

B.R. 996 (Bankr.M.D.Fla.1992), the bankruptcy court found that a plan was not proposed in good faith and therefore could not be confirmed. The bankruptcy court explained that

> the entire [p]lan of the [d]ebtor was designed to achieve one purpose and one purpose only, which is to get the principal of the [d]ebtor, Woolley, off the hook on his guarantee of the primary obligation of the [d]ebtor, and to prevent Mellon from enforcing any claim against him on his guarantee.
>
> \* \* \* \* \* \*
>
> Clearly, this not very well disguised goal sought to be achieved through Chapter 11 by the [d]ebtor, has no resemblance to any legitimate goal which was envisioned by Congress when it crafted Chapter 11.

*Id.* at 1002–03. It would be anomalous to recognize that the protection of non-debtor guarantors is not a legitimate purpose for filing a bankruptcy proceeding, but to permit such protection to constitute a proper reason for differential classification of claims within the bankruptcy proceeding.

On a few occasions in the past, I have issued orders temporarily restraining creditors from pursuing state court remedies against third-party guarantors. In those cases, I have found that preservation of the guarantors' assets was essential to the possibility of an effective reorganization. In such cases, the main purpose of the order is to benefit the estate, although the order has a collateral effect of at least temporarily benefiting third-party guarantors. In this case, however, benefit to the third-party guarantor is not a collateral effect of Thornwood's proposal—such benefit is offered as a substantive reason for altering the outcome of this proceeding via the claim classification process. Because, however, benefit to a third-party guarantor is not, by itself, a concern of the bankruptcy court, such benefit cannot

not by itself a valid reason for separate classification, because in the Chapter 11 context, the legal distinction between non-recourse deficiency claims and other unsecured claims has been eliminated. *John Hancock,* 987 F.2d at 159–160; *see also Greystone III,* 948 F.2d at 140. There

does not appear to be any reason why a claimant's potential recourse against a non-debtor would weigh more heavily in the claim classification determination within the Chapter 11 context.

stand as a reason separately to classify a creditor's claims.

Thornwood's proposed classification scheme also implicates concerns with respect to a number of plan confirmation requirements. For example, permitting Gallant voting powers equal to the Greater likely would run afoul of the "fair and equitable" requirement of Section 1129(b). *See In re Waterways Barge Partnership,* 104 B.R. 776, 785–86 (Bankr.N.D.Miss.1989), *cited in 266 Washington Assocs.,* 141 B.R. at 286. Moreover, Thornwood's attempt to place Gallant in an equity position superior to other creditors in exchange for his promise to forego rights against Thornwood's principals, *see supra* p. 370, on its face raises concerns of unfair discrimination, prohibited by Section 1129(b)—Gallant may obtain a more favorable position without having contributed anything of value to the reorganization.[3] These plan confirmation concerns, of course, are separate from the claim classification issue before me at this time,[4] and, because they are not ripe for determination, I do not rely upon them as grounds for my decision. That their specter is raised by Thornwood's proposed classification scheme, however, does strengthen the determination that the classification scheme does not have a proper purpose related to the bankruptcy process.

Finally, Thornwood contends that its proposed classification scheme does not run afoul of the Bankruptcy Code's classification requirements, because:

[e]ssentially, the same opportunity is available to the bank if it would elect to have its entire claim treated as Secured pursuant to 11 U.S.C. § 1111(b). It appears that the bank prefers to rely upon forcing a rejection of any reorganization plan by virtue of its sizeable deficiency claim, in lieu of making an 1111(b) election. The Debtor has ample justification for discriminating between the treatment of the first and second mortgagees within the parameters of 11 U.S.C. § 1129(b).

This argument merely restates the "gerrymandering" ground rejected in *John Hancock. See John Hancock,* 987 F.2d at 159. It also is answered repeatedly in the various decisions on the claim classification issue. For example, in *266 Washington Assocs.,* the bankruptcy court stated:

Section 1111(b) expressly gives a class of secured creditors the right to elect whether their claims should be treated as fully secured or as secured claims to the extent of the value of the collateral and as unsecured claims for the deficiency. As the plain words of Section 1111(b) suggest, the choice of whether a secured claim will be treated as fully secured or split into secured and unsecured components belongs entirely to the creditor. The choices available to a secured creditor under Section 1111(b) surely include a statutory option to employ an unsecured deficiency claim to have a significant voice in, and if its claim is large enough, dominate the unsecured class so that it can avoid the genre of tactical classification of claims schemes being used in this case to silence [the secured creditor].

*266 Washington Assocs.,* 141 B.R. at 275. Similarly, in *Greystone III,* the court stated:

The purpose of § 1111(b) is to provide an undersecured creditor an election with respect to the treatment of its deficiency claim. Generally, the creditor may elect recourse status and obtain the right to vote in the unsecured class, or it may elect to forego recourse to gain an allowed secured claim for the entire amount of the debt.... Plan proponents could effectively disenfranchise the holders of such [unsecured deficiency] claims by placing them in a separate class and confirming the plan over their objection by cram down.

---

**3.** For example, in *In re Stratford Assoc. Ltd. Partnership,* 145 B.R. 689 (Bankr.D.Kan.1992), the court found that a plan discriminated unfairly where permitted one unsecured creditor to retain a lien and be paid postpetition/preconfirmation interest unlike other secured creditors. *Id.* at 700–01.

**4.** As stated by one bankruptcy court:

[u]nfair discrimination is a cram down issue under 11 U.S.C. § 1129(b)(1). Classification of claims are 11 U.S.C. §§ 1122 and 1129(a)(10) issues, the propriety of which will determine whether cram down could even be considered by a bankruptcy court.

*266 Washington Assocs.,* 141 B.R. at 286.

*Greystone III,* 948 F.2d at 140. Finally, in *500 Fifth Avenue,* the bankruptcy court stated:

> Congress enacted section 1111(b) to give nonrecourse debt a voice in the [C]hapter 11 process. The purpose of the [S]ection 1111(b) election is to allow the undersecured creditor a right to potentially dominate the vote within the unsecured class; the larger the nonrecourse claim, the larger that claimant's voice sounds. Courts have recognized that granting one voting power commensurate with the amount of one's claim gives effect to the statutory meaning of [S]ections 506(a) and 1111(b).

*500 Fifth Avenue,* 148 B.R. at 1021.

In this case, permitting separate classification of Gallant's claim eliminates a significant benefit to the Greater of electing recourse status under Section 1111(b)—its opportunity to vote for or against confirmation as a dominant member of a single class of unsecured creditors. Separate classification of Gallant's claim gives Gallant a voice in the plan confirmation process equal to or greater than that of the Greater. The Bankruptcy Code, as interpreted by our circuit court, permits such treatment only where there are significant differences in the nature of the claims as they relate to the assets of the debtor's estate. The reason for separate classification identified by Thornwood does not relate to the assets of the debtor's estate, but rather relates to the interests of separate third parties.

█ Nor does the fact that Thornwood seeks to place Gallant in an equity position create a difference that would alter my conclusion. This difference is in a debtor's proposed treatment of a claim rather than in the nature of the claim as it relates to the assets of the estate. The latter constitutes the proper test for differential classification.

Given that fact that no valid reason for separate classification has been presented, I must determine whether this forecloses the possibility of plan confirmation and, therefore, of an effective reorganization. The parties have stipulated that the current market value of the secured property is $1.8 million dollars. N.T., Jan. 19, 1993, at 4. Subtracting this value from the amount of the Great-

er's confessed judgment, it appears that the Greater has an unsecured deficiency claim of at least $845,000.00. This amount constitutes over one-half of the unsecured debt. Therefore, Thornwood cannot obtain the vote of the holders of at least two-thirds of the allowed interests of unsecured creditors without the Greater's vote. The only remaining issue is whether the Greater's unsecured deficiency claim should be allowed in the amount of at least $845,000.00. At the January 19th hearing, Thornwood expressly preserved its right to contest the amount of the unsecured deficiency claim. Accordingly, I will issue an Order that provides that Thornwood must submit within ten days a proffer of proof with respect to the valuation of the Greater's unsecured deficiency claim such as would raise a legitimate issue as to the confirmability of its plan by "cram down." If Thornwood does not timely submit such a proffer, the automatic stay shall lift on the ground that Thornwood has failed to demonstrate the possibility of an effective reorganization.

AN APPROPRIATE ORDER WILL FOLLOW.

### *ORDER*

AND NOW, this 31st day of March, 1993, upon consideration of the motion to lift the automatic stay filed by the Greater New York Savings Bank and the response thereto, it is hereby ORDERED that the motion is GRANTED with respect to the 114 unit garden apartment complex known as Thornwood Apartments, owned and operated by Thornwood Associates, subject to the right of Thornwood Associates to submit within ten days after the entry of this Order a proffer of proof that will establish a legitimate issue as to whether the value of the unsecured deficiency claim held by the Greater should be limited to an amount that constitutes less than one-third of the total value of all allowed unsecured claims. If Thornwood Associates submits such a proffer of proof, the automatic stay shall remain in full force and effect pending further order of this Bankruptcy Court.