**FGH REALTY CREDIT CORP., Appellant**

v.

**NEWARK AIRPORT/HOTEL LIMITED PARTNERSHIP, Appellee.**

**Civ. A. No. 93–864 (WGB).**

United States District Court, D. New Jersey.

June 1, 1993.

---

**19.** We do not decide whether FCIDC was perfected during the eight months preceding notification to Bank.

Crummy, Del Deo, Dolan, Griffinger & Vecchione by Paul R. DeFilippo, Newark, NJ, for appellant.

Shapiro & Shapiro by John P. Di Iorio, Esq., Hackensack, NJ, for appellee.

### OPINION

BASSLER, District Judge:

FGH Realty Credit Corp. ("FGH") appeals the January 28, 1993 decision of the United States Bankruptcy Court denying relief from the automatic stay barring mortgage foreclosure in *In re Newark Airport/Hotel Limited Partnership*, Bankr. No. 92–25498 (WFT), 156 B.R. 444. For the following reasons, the decision of the Bankruptcy Court is affirmed.

### I. Background

The Newark Airport/Hotel Limited Partnership ("NAHLP") owns and operates the Newark Sheraton Hotel in Elizabeth, New Jersey under an ITT Sheraton franchise.

NAHLP purchased and renovated the hotel in June of 1989, in part with at $15,250,000 loan from FGH. As collateral for the loan, FGH holds a first mortgage on the property and a security interest in NAHLP's assets.

Because NAHLP made no payments on the mortgage after June 1, 1990, FGH commenced a foreclosure action in New Jersey Superior Court on February 20, 1991. NAHLP filed an answer and counterclaim in the action. A final judgment in foreclosure was entered on February 18, 1992, finding NAHLP liable to FGH, as of January 31, 1992, for $19,440,352.21. On March 30, 1992, NAHLP appealed the judgment to the Appellate Division and sought a stay pending appeal. However, on June 25, 1992, the Appellate Division denied NAHLP's request for a stay.[1]

The property was initially scheduled to be sold at a sheriff's sale on May 13, 1992. The sale was adjourned to June 10 and finally to July 8, 1992. On July 7, 1992, NAHLP filed a petition in bankruptcy under Chapter 11 of the United States Bankruptcy Code. The sheriff's sale, accordingly, was stayed.

On October 2, 1992, FGH filed a motion for relief from the automatic stay pursuant to 11 U.S.C. § 362(d). Designation Exhibit 2. In addition, FGH moved to dismiss NAHLP's Chapter 11 petition pursuant to 11 U.S.C. § 1112(b) on the grounds that it was "filed with a lack of good faith on the eve of the scheduled Sheriff's sale in foreclosure on the Property." NAHLP filed a motion pursuant to 11 U.S.C. § 1121(d) seeking an extension of the exclusivity period within which to file a reorganization plan.

Hearings on all three motions were held before the Honorable William F. Tuohey on December 3, 4, 10, and 16, 1992. The Bankruptcy Court heard testimony from seven witnesses[2] and admitted numerous

---

1. The appeal in the foreclosure action was argued before the Appellate Division on March 1, 1993. No decision has yet been rendered.

2. NAHLP called four witnesses—Joel Rosenfeld, a certified public accountant; Alan Knoph, the comptroller for the hotel; Brian Acucena, a

hospitality industry consultant; and Sheldon Blittner, the general partner of NAHLP—and FGH called three witnesses—Ralph Steinhardt and Mary Fitzpatrick, hospitality industry consultants; and Brian Moore, a certified public accountant.

exhibits into evidence. On January 28, 1993, Judge Tuohey issued an opinion and order denying FGH's motions to dismiss the petition and for relief from the automatic stay, and granting NAHLP's motion for an extension of the exclusivity period. Designation Exhibits 11 & 12. FGH appeals only the denial of relief from the automatic stay. *See* FGH's Notice of Appeal filed February 4, 1993.

## II. Jurisdiction

28 U.S.C. §§ 158(a) provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges...." NAHLP argues that the denial of relief from the automatic stay was "without prejudice" and therefore is not final and not appealable without leave of the court.

NAHLP's argument is based on the following statement in Judge Tuohey's January 28, 1993 opinion:

> [t]he court recognizes that the debtor's unreasonable delay in filing a plan of reorganization could ultimately have an effect on the value of FGH's claim. Therefore, if the debtor fails to submit its plan by March 26, 1993 or receive the court's confirmation of said plan by May 26, 1993, FGH will be free to move for relief from the automatic stay.

Designation Exhibit 11, at 17. Initially, the Court notes that this statement is contained in the section of the opinion addressing NAHLP's motion for extension of the exclusivity period. The portion discussing FGH's motion for relief from the automatic stay does not state that the denial of that motion is without prejudice. *See* Designation Exhibit 11, at 10–14. The order accompanying the opinion also does not state that the denial was without prejudice. *See* Designation Exhibit 13.

The Third Circuit takes a pragmatic view of finality in bankruptcy cases. *See John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Assocs.*, 987 F.2d 154, 157 (3d Cir.1993). A decision in a bankruptcy matter is final when " 'nothing remains for the [lower] court to do.' " *In re West Electronics Inc.*, 852 F.2d 79, 81 (3d Cir. 1988) (quoting *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101 (3d Cir.1981)). Applying this standard, the Third Circuit has held that a refusal to lift the automatic stay is final when it is based on a rejection of the movant's legal position. *Id.* at 82. Since Judge Tuohey's denial of relief from the automatic stay in this case was based upon his rejection of FGH's legal position, his order is therefore final and is appealable to this Court as of right.

## III. Standard of Review

The Bankruptcy Court's factual findings may be disturbed only if clearly erroneous. *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1221 (3d Cir.1989). A factual finding is clearly erroneous if it is either "completely devoid of minimum evidentiary support displaying some hue of credibility or ... bears no rational relationship to the supportive evidentiary data," *Krasnov v. Dinan*, 465 F.2d 1298, 1302–03 (3d Cir. 1972) or, even though there is some evidence to support it, if the reviewing court is left with the definite and firm conviction that a mistake has been made, *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

The legal conclusions of the Bankruptcy Court, however, are subject to plenary review. *See* Fed.R.Bankr.P. 8013; *see also J.P. Fyfe, Inc. v. Bradco Supply Corp.*, 891 F.2d 66, 69 (3d Cir.1989) (citations omitted). Where mixed questions of law and fact are presented, the appropriate standard must be applied to each component. *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir.1989). Thus, where a decision involves a legal concept with a factual component—"usually expressed in the language of a standard enunciated by caselaw rule or by statute"—a reviewing court "must accept the [lower] court's findings of historical or narrative facts unless they are clearly erroneous, but ... must exercise a plenary review of the [lower]

court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 103 (3d Cir.1981).

## IV. Discussion

Section 362(d) of the Bankruptcy Code provides that

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

11 U.S.C.A. 362(d) (West 1993). Although FGH's motion in the Bankruptcy Court was premised on both subsections of Section 362(d), FGH's assertions of error address only Section 362(d)(2). Moreover, since NAHLP has conceded that FGH has "a valid lien in excess of the fair market value of the property," Designation Exhibit 6, at 6, the sole issue on this appeal is whether the Bankruptcy Court correctly decided that the hotel was "necessary to an effective reorganization."

■ The burden of establishing that a property is necessary to an effective reorganization rests with the debtor. *United Savings Ass'n v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 375, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988); *see* 11 U.S.C. 362(g)(2). "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means ... that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" *Id.* at 375–76, 108 S.Ct. at 633.

## A. Confirmability of a Plan

Although a hearing on a motion to lift the automatic stay is not tantamount to a confirmation hearing, the "effective reorganization" language of Section 362(d) requires that the debtor show, in opposing such a motion, "that a proposed or contemplated plan is not patently unconfirmable...." *John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Assocs.,* 987 F.2d 154, 157 (3d Cir.1993) (quoting *In re 266 Washington Assocs.,* 141 B.R. 275, 281 (Bankr.E.D.N.Y.1992), *aff'd,* 147 B.R. 827 (E.D.N.Y.1992)). FGH asserts that the Bankruptcy Court erred in finding a reasonable possibility of reorganization because NAHLP cannot, as a matter of law, propose any plan that could be confirmed over FGH's objections. Accordingly, it is necessary to consider the requirements for confirming a reorganization plan under the Bankruptcy Code.

■ A plan of reorganization can be confirmed in two ways: under Section 1129(a), which requires acceptance by all impaired classes of claims; or under Section 1129(b), the so-called "cram down" method, which requires acceptance by at least one impaired class. *Route 37,* at 157–58; *see* 11 U.S.C.A. § 1129(a) & (b) (West 1979 & Supp.1992). For confirmation under the "cram down" method, a plan also must satisfy the requirements of Section 1129(a) other than that of approval by all impaired classes, and must not discriminate unfairly against and must be fair and equitable to all impaired classes that do not approve the plan. *Route 37,* at 157 & n. 5; *see* 11 U.S.C.A. 1129(b) (West 1979 & Supp. 1992). A class is deemed to have accepted a plan if members who hold "at least two-thirds in amount and more than one-half in number of the allowed claims" vote to accept. 11 U.S.C.A. § 1126(c) (West 1979 & Supp.1992).

Under Section 1122(a), "a plan may place a claim or interest in a particular class only if such claim or an interest is substantially similar to the other claims or interests of

such class." 11 U.S.C.A. § 1122(a) (1979). However, because the separation of similar claims is not expressly prohibited, the Third Circuit has stated that similar claims may be grouped in different classes if the classification is "reasonable." *Route 37*, at 158; *In re Jersey City Medical Center*, 817 F.2d 1055, 1061 (3d Cir.1987). The reasonableness requirement is imposed to limit the debtor's ability to "manipulate 'acceptance' by artful classification." *In re Greystone III Joint Venture*, 948 F.2d 134, 138 (5th Cir.1991), *cert. denied*, — U.S. —, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992); *see Route 37*, at 157–58; *Jersey City Medical Center*, 817 F.2d at 1061.

 The similarity of claims is determined by their legal status in relation to the debtor. *See In re Jersey City Medical Center*, 817 F.2d 1055, 1061 (3d Cir.1987); *see also In re AOV Indus. Inc.*, 792 F.2d 1140, 1150 (D.C.Cir.1986). Accordingly, " 'unsecured claims will, generally speaking, comprise one class, whether trade, tort, publicly held debt, or a deficiency of a secured creditor' " because "they are claimants of equal legal rank entitled to share pro rata in values remaining after payment of secured and priority claims." *In re 266 Washington Assoc.*, 141 B.R. 275, 282 (Bankr.E.D.N.Y.1992). Secured claims, however, are not substantially similar to unsecured claims. Moreover, each secured claim is generally not substantially similar to other secured claims. *See In re Holthoff*, 58 B.R. 216, 219 (Bankr.E.D.Ark. 1985); *see also* 5 Collier on Bankruptcy ¶ 1122.03 (Lawrence P. King et al., eds. 15th ed. 1992).

NAHLP's filings in the Bankruptcy Court show FGH as its only secured creditor, with a claim, as of the petition date, of $18,727,000.04. Designation Exhibit 31, at 9. The City of Elizabeth, the State of New Jersey, and the State of New York hold unsecured priority claims for unpaid taxes of $989,390.03. *Id.* at 10–11. Finally, numerous creditors, including ITT Sheraton, hold unsecured non-priority claims totalling $ 1,105,109.57. *Id.* at 12–24. NAHLP also lists a number of executory contracts to which it is a party, including collective bargaining agreements with several unions and a license agreement with Sheraton Inns, Inc. ("Sheraton"). *Id.* at 25–29.

At the time of the December hearings, no plan of reorganization was before the court. At the December 3 hearing, NAHLP's counsel told Judge Tuohey that the debtor would propose a plan "within, we hope, the next 90 to 120 days." Designation Exhibit 7, at 13. However, to demonstrate that reorganization was feasible, NAHLP offered a ten-year financial forecast prepared by the hotel's comptroller, Alan Knoph. Designation Exhibit 17. In it, he "attempted to show the income and expenses that the hotel would generate ... for the next ten years." Designation Exhibit 8, at 8.

The forecast treated FGH's undersecured claim as a $10,500,000 secured claim (representing the value of the hotel) and an $8,000,000 unsecured deficiency claim, pursuant to 11 U.S.C.A. § 506(a) (West 1993).[3] The secured portion would be paid off at an interest rate of 7%. *Id.* at 96. The unsecured portion, along with the $1,100,000 owed to the other unsecured creditors (which included the $500,000 owed to ITT Sheraton in pre-petition franchise fees), would be treated "as a 10% plan paid out over five years." Designation Exhibit 7 at 59–60; Designation Exhibit 8 at 7–10. The forecast assumed an infusion of $500,000 in outside capital, Designation Exhibit 8 at 12–13, and a 50% reduction in the pre-petition real estate taxes in a tax appeal pending at the time of the hearing. *Id.* at 75–76.

In *John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Assoc.*, 987 F.2d 154 (3d Cir.1993), the Third Circuit found impermissible—as have several other Cir-

---

**3.** Section 506(a) provides that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim...." 11 U.S.C.A. § 506(a) (West 1993). "The phrase 'value of such creditor's interest' in § 506(a) means 'the value of the collateral.' " *Timbers*, 484 U.S. at 372, 108 S.Ct. at 631.

cuits—a classification scheme that separated the unsecured deficiency claim of an undersecured mortgagee from the claims of other unsecured creditors solely to effectuate a "cram down" confirmation.[4] *Id.; see In re Bryson Properties, XVIII*, 961 F.2d 496 (4th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 191, 121 L.Ed.2d 134 (1992); *In re Greystone III Joint Venture*, 948 F.2d 134, 138 (5th Cir.1991), *cert. denied,* — U.S. ——, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992); *In re Lumber Exch. Bldg. Ltd. Partnership*, 968 F.2d 647 (8th Cir.1992). The opinion in the *Route 37* case was filed only six days before the Bankruptcy Court issued its opinion denying FGH's motion for relief from the stay, and was not considered in the decision. According to FGH, *Route 37* makes it impossible for NAHLP to classify the claims of its creditors into a confirmable plan.

■ Under *Route 37*, FGH's unsecured deficiency claim cannot constitute a class of its own. On this the parties agree, and NAHLP's forecast indeed would place FGH's unsecured claim in the same class as the unsecured trade claims. Appellee's Brief at 19; *see* Designation Exhibit 7, at 59–60. FGH therefore argues that any plan· proposed by NAHLP could contain only two voting classes: one consisting of FGH's unsecured deficiency claim and the other unsecured claims, and a second consisting of FGH's secured claim. Since FGH holds the greatest dollar amount of the unsecured creditors, the argument continues, FGH would control acceptance by both classes and NAHLP could not confirm any plan over the objection of FGH. FGH represents that it will vote to reject any plan based on what it refers to as NAHLP's "ten cent Plan." Appellant's Brief at 14.

■ FGH, however, is incorrect in its assertion that under no circumstances could NAHLP propose a plan containing more than two classes. *Route 37* does not absolutely prohibit the separation of similar claims; it requires only that, in a cram down case, "each class must represent a voting interest that is sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed reorganization should proceed." *Route 37*, at 159. A class made up of the claims of NAHLP's employees' unions resulting from a rejection of their collective bargaining agreements with NAHLP would meet this standard. *See In re U.S. Truck Co.*, 800 F.2d 581 (6th Cir.1986).

■ Under Section 365 of the Bankruptcy Code, a trustee or debtor in possession has the right to accept or reject executory contracts. *See* 11 U.S.C.A. § 365 (West Supp.1992); *see also* Benjamin Weintraub & Alan N. Resnick, Bankruptcy Law Manual ¶ 5.07[3] (3d ed. 1992). A contract is executory if, at the time of filing of the debtor's bankruptcy petition, performance is due to some extent on both sides. *See In re American Med. Imaging Corp.*, 133 B.R. 45, 54 (Bankr.E.D.Pa.1991). Put another way, an executory contract is one where "the 'obligations of both the bankrupt and the other party are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other.'" *Sharon Steel Corp. v. National Fuel Gas Distribution Corp.*, 872 F.2d 36, 39 (3d Cir.1989) (quoting Countryman, *Executory Contracts in Bankruptcy, Part 1*, 57 Minn.L.Rev. 439, 460 (1973)). The rejection of an executory contract may cause damages and thereby give rise to a claim against the debtor. *See* 11 U.S.C.A. 502(g) (West Supp.1992).

■ Claims resulting from the rejection of executory contracts are legally similar to general unsecured claims. *See* 5

---

4. In *Route 37,* an undersecured mortgagee appealed the bankruptcy court's refusal to lift the stay barring foreclosure of the property. The district court had affirmed the decision, but the Third Circuit reversed, finding the debtor's reorganization plan to be unconfirmable. The debtor proposed to treat the mortgagee's claim pursuant to 11 U.S.C. § 506(a), by dividing it into a secured claim and an unsecured deficiency claim. All of the claims were then to be classified as follows: one class consisting of the secured portion of the mortgagee's claim, another class consisting of all unsecured claims other than the mortgagee's; and a third class consisting only of the unsecured portion of the mortgagee's claim. *Id.* at 5.

Collier on Bankruptcy ¶ 1122.03[4], at 1122–11 (Lawrence P. King et al., eds. 15th ed. 1992). Therefore, they can be classified separately only "for 'reasons independent of the debtor's motivation to secure the vote of an impaired, assenting class of claims.'" *In re Lumber Exchange Bldg. Ltd. Partnership*, 968 F.2d 647, 649 (8th Cir.1992) (quoting *In re Greystone III Joint Venture*, 948 F.2d 134, 139 (5th Cir. 1991)). Independent reasons exist where a union has a claim arising from the rejection of a collective bargaining agreement because the union has a "non-creditor interest"—it might vote based on the plan's effect on its members' employment rather than on the plan's treatment of it as a creditor.[5] *In re U.S. Truck Co.*, 800 F.2d 581, 587 (6th Cir.1986). Although the record does not indicate whether NAHLP has rejected or will reject any of the collective bargaining agreements, it has the ability to do so.[6] Therefore, FGH's argument that NAHLP could not as a matter of law propose any plan that could be confirmed over FGH's objection must fail.

FGH also points to several other confirmation requirements that it asserts NAHLP's ten-year forecast does not meet. First, FGH argues that the forecast does not take into account its ability to elect to have its claim treated as fully secured under Section 1111(b)(2).[7] FGH asserts that if it so elects, NAHLP will be unable to service $20 million in debt and therefore its plan would fail to meet the feasibility requirement of Section 1129(a)(11). Second, FGH asserts that the reduced interest rate violates Section 1129(b)(2)(A)(i)(II)'s requirement that FGH receive the present value of its secured claim. Finally, FGH contends that the proposal to pay the unsecured creditors 10% over five years violates the "absolute priority rule" of Section § 1129(b)(2)(B).[8]

However, "the requirements for successful opposition to a ... motion [to lift the automatic stay] under 11 U.S.C. § 362(d)(2) [are] not to be equated with sustaining the burden of confirming a reorganization plan...." *In re 266 Washington Assoc.*, 141 B.R. 275, 281 (Bankr. E.D.N.Y.1992). It must be remembered that at the time the Bankruptcy Court made its decision, no plan had been proposed and the exclusivity period had been extended. Accordingly, a less stringent showing of the possibility of confirmation was required. *See Timbers*, 484 U.S. at 376, 108 S.Ct. at 633. The arguments that FGH now makes as to the perceived defects in the ten-year forecast are better addressed at a confirmation hearing, should that forecast form the basis of NAHLP's proposed plan. *See In re Northgate Terrace Apartments*, 126 B.R. 520, 525 (Bankr.S.D. Ohio 1991). The Court

**5.** In *In re U.S. Truck Co.*, 800 F.2d 581 (6th Cir.1986), the debtor proposed a plan that divided the unsecured claims into two impaired classes: one consisting of a union's damage claim resulting from the rejection of a collective bargaining agreement, and a second consisting of all claims in excess of $200 including those arising from the rejection of other executory contracts. *See In re U.S. Truck Co.*, 47 B.R. 932, 936 (E.D.Mich.1985).

**6.** The Court notes that under 11 U.S.C.A. § 1113 (West Supp.1992), rejection of a collective bargaining agreement must be preceded by good-faith bargaining and by a showing that it is necessary for the continuation of the business. *See Wheeling–Pittsburgh Steel Corp. v. United Steelworkers of America*, 791 F.2d 1074 (3d Cir. 1986).

**7.** When such an election is made, "an allowed claim is a secured claim to the extent that the claim is allowed, notwithstanding the value of the collateral as determined under § 506(a)." *In re 222 Liberty Assocs.*, 108 B.R. 971, 977 (Bankr.E.D.Pa.1990). However, if FGH elects under Section 1111(b)(2) to have its entire claim treated as secured, it loses its unsecured deficiency claim and accordingly will be unable to make the classification argument discussed above.

**8.** The absolute priority rule prevents a shareholder or equity holder from retaining its investment in the debtor unless all other creditors consent or are paid in full. *See* 11 U.S.C. § 1129(b)(2)(B). However, under the so-called "new value" exception to that rule, the investment may be retained if the equity holder contributes "'money or money's worth'" that is reasonably equivalent in value to the investment that will be kept. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 203, 108 S.Ct. 963, 967, 99 L.Ed.2d 169 (1988) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939)).

also notes that FGH made none of these arguments before the Bankruptcy Court. Rather, "FGH's only argument with respect to the debtor's ability to reorganize [was] that the debtor will be unable to identify a third-party investor or buyer in a reasonable period." Designation Exhibit 11, at 12.

### B. The Bankruptcy Court's Factual Findings

The Bankruptcy Court found that NAHLP had shown a reasonable possibility of reorganization based on the following:

> ... the debtor has indicated that, to the extent necessary to fund a plan, it has a source of funding available from its limited partners. Moreover, as the record shows, the Hotel is an ongoing business with over one hundred (100) employees and has ongoing contractual agreements with several airlines to provide guaranteed rooms. In addition, the Hotel has a number of contractual commitments for private parties in its restaurant and catering facilities. Finally, the debtor has been generating sufficient revenues to pay its expenses and to pay FGH pursuant to the consent cash collateral order entered by this court on October 20, 1992.

Designation Exhibit 11, at 11–12. FGH asserts that the findings that NAHLP had an available funding source and had been generating enough money to pay its expenses are clearly erroneous. This Court disagrees.

■ The first statement is borne out by the testimony of Alan Knoph, the hotel's comptroller, and Sheldon Blittner, NAHLP's general partner, that they planned to seek $500,000 from NAHLP's 160 limited partners in order to reorganize. Both admitted, however, that the limited partners had not yet been approached.

FGH makes much of Mr. Blittner's testimony that when he sought $1,300,000 from the limited partners in January of 1991, he was unsuccessful. Designation Exhibit 8, at 175–76, 187–88. However, that there is uncertainty as to whether NAHLP actually will be able to obtain funding from the limited partners when it approaches them does not render the Bankruptcy Court's finding clearly erroneous. The Bankruptcy Court still was entitled to conclude that the limited partners are an available funding source.

■ The record also supports the statement that the hotel has been generating revenue. The testimony of Joel Rosenfield, a certified public accountant, clearly shows that the hotel has been operating on a positive cash flow basis. Designation Exhibit 7, at 19–21.

■ This Court's responsibility on this appeal is not to substitute findings it could have made were it the factfinder for those of the Bankruptcy Court; rather, its only function is to review the record to determine whether there was clear error. *Krasnov v. Dinan*, 465 F.2d 1298, 1302 (3d Cir.1972). Because this Court is not " 'left with a definite and firm conviction that a mistake has been committed[,]' " *id.* (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)), the Court concludes that the Bankruptcy Court's findings are not clearly erroneous.

### V. Conclusion

For the foregoing reasons, the decision of the Bankruptcy Court is affirmed. An appropriate order follows.